J-S65015-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN THE MATTER OF THE ADOPTION OF: S.R.B. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: C.R.B. AND S.B. | No. 531 WDA 2016 |

Appeal from the Order Entered March 10, 2016
In the Court of Common Pleas of Erie County
Orphans' Court at No(s): 55 IN Adoption 2015

BEFORE:  LAZARUS, J., OLSON, J., and PLATT, J.[*]

MEMORANDUM BY LAZARUS, J.:          **FILED SEPTEMBER 08, 2016**

C.R.B. and S.B. appeal from the trial court's order denying their petition to involuntarily terminate the parental rights of Appellee, A.B. ("Father") to his daughter, S.R.B. ("Child") (born 2/12).[1]  After careful review, we affirm.

Appellants are Child's legal guardians.  C.R.B. is Child's maternal grandmother; S.B. is Child's step-grandfather.  J.R. is Child's maternal grandfather and C.R.B.'s former husband.  Mother and Father met in 2011; Mother became pregnant with Child shortly thereafter.  Mother has serious drug abuse issues; Father was incarcerated for theft in early 2013, just after

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The parental rights of Child's mother, N.R, were also involuntarily terminated.  She, however, is not a party to this appeal.

Child's first birthday. Due to Mother and Father's erratic and dangerous behaviors, Appellants often cared for Child. In May 2013 Child was adjudicated dependent after Mother was arrested for driving under the influence with Child in the vehicle. Child remained in foster care for one month and, in 2014, Child was placed in Appellants' care. In June 2014, Appellants were awarded legal custodianship of Child.

On July 20, 2015, Appellants filed a petition to terminate Father's parental rights under sections 23 Pa.C.S. §§ 2511(a)(1), (a)(2), (a)(5), (a)(8) and (b) of the Adoption Act.[2] On March 10, 2016, the trial court held a termination hearing at which C.R.B., J.R., and Father (via telephone from prison) testified. On March 10, 2016, the trial court entered an order denying Appellants' petition to terminate Father's parental rights. This timely appeal follows.

On appeal, Appellants present the following issue for our review:

Did the trial Court abuse its discretion and render its opinion on insufficient evidentiary support when it refused to terminate the parental rights of Father to his daughter [S.R.B.] where, in the first year of [S.R.B.'s] life, Father lived a chaotic lifestyle, abused drugs, used alcohol and failed to provide his daughter with a stable, safe living situation, and since that time has been incarcerated, has failed to indicate when he will be released, has failed to solidify tangible plans for housing and a job upon his release, has made only minimal attempts to contact his daughter, and has only a tenuous parental bond with her?

_____

[2] 23 Pa.C.S. §§ 2101-2910.

When reviewing a trial court's decision to grant or deny a termination of parental rights petition, an appellate court should apply an abuse of discretion standard, accepting the court's findings of fact and credibility determinations if they are supported by the record, and reversing only if the trial court made an error of law or abused its discretion. *In re S.P.*, 47 A.2d 817, 826 (Pa. 2011). "[A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id.*

It is well established that "[i]ncarceration of a parent does not, in itself, provide grounds for the termination of parental rights[;] a parent's responsibilities are not tolled during his incarceration." *In re D.J.S.*, 737 A.2d 283, 286-87 (Pa. Super. 1999). In *In re S.P.*, *supra*, the Pennsylvania Supreme Court further explored the relevance of incarceration in termination cases under section (a)(2). The Court stated:

> [I]ncarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing "essential parental care, control or subsistence" and the length of the remaining confinement can be considered as highly relevant to whether "the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent," sufficient to provide grounds for termination pursuant to 23 Pa.C.S. § 2511(a)(2).

*Id.* at 830. Moreover, the Court noted that

> [a] parent's absence or/or failure to support [his or her child] due to incarceration is not conclusive on the issue of abandonment. Nevertheless, we are not willing to completely toll a parent's responsibilities during  his or her incarceration. Rather, **we must inquire whether the parent has utilized**

- 3 -

**those resources at his or her command while in prison in continuing a close relationship with the child. Where the parent does not exercise reasonable firmness in declining to yield to obstacles, his other rights may be forfeited.**

*Id.* at 828 (emphasis added).

Instantly, Father was incarcerated just after Child's first birthday and will remain incarcerated, at a minimum, until Child is 4 years of age, and likely older. **See id.** at 831 ("[L]ength of remaining confinement can be considered as highly relevant to whether 'the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.'"). However, "[p]arental duty requires that the parent not yield to every problem, but must act affirmatively, with good faith interest and effort, to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances." **In re D.J.S.**, *supra* at 284.

Here, the testimony unequivocally shows that Father calls Child at least once or twice daily when she is in Maternal Grandfather, J.R's care. While Child has not visited with Father recently, this as a result of Appellants' decision "to not normalize the prison system for [Child]." N.T. Termination Hearing, 3/10/16, at 43. Moreover, the trial court did not find C.R.B.'s (Maternal Grandmother) testimony regarding Father's failure to request visits or call Child on the phone credible. **See In re S.P.**, *supra*. Instead, the court chose to credit Father's testimony that: (1) he attempted to call Child at least four times a month when she was in Appellants' care; (2) he has consistently sent Child letters, pictures of himself, and presents during the holidays; (3) Appellants refused to allow him to talk or visit with

Child continuously throughout 2014-2015; (4) despite Appellants' obstructionist tactics, Father has continued to remain in contact with Child via reaching out to J.R. (Maternal Grandfather); (5) Father has been taking classes and workshops in prison to address his behavior problems; (6) Father is a trained laborer and currently works in a carpentry shop to build his employability skill post-incarceration; (7) Father has a post-incarceration plan for supporting him and Child; and (8) Father has a bond with Child.

After reviewing the certified record, relevant case law and the parties' briefs on appeal, we rely upon the comprehensive opinion authored by the Honorable Robert A. Sambroak, Jr., to affirm the trial court's order denying Appellants' petition to terminate Father's parental rights to Child. We instruct the parties to attach a copy of Judge Sambroak, Jr.'s decision in the event of further proceedings in the matter.

Order affirmed.[3]

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

_____

[3] Child's Guardian Ad Litem has also filed a brief in the instant appeal and concurs with the trial court's order denying termination of Father's parental rights to Child.

Date: <u>9/8/2016</u>

IN THE MATTER OF       :     COURT OF COMMON PLEAS
THE ADOPTION OF       :     OF ERIE COUNTY, PENNSYLVANIA
                              :     ORPHANS COURT DIVISION
                              :
S▆▆▆ R▆▆ B▆▆▆       :     No. 55 in Adoption 2015

## 1925(a) OPINION

The maternal grandmother and her husband, who are also the permanent legal custodians of S▆▆ R▆▆ B▆▆▆, filed a petition to involuntarily terminate the parental rights of both the biological mother and biological father. Following a hearing a Decree was entered granting the petition to terminate the parental rights of the mother.[1] A separate order was entered denying the petition as to the father. The grandparents filed a timely appeal from that order. Because clear and convincing evidence was not presented to support the claims of the maternal grandparents that father's parental rights should be terminated, it is requested the Superior Court affirm the order.

## ISSUES PRESENTED

Appellant raises the following issues:

First, this court erred in not terminating Father's parental rights where Father was unable to provide the court with a date on which his lengthy incarceration would end and/or what his plans relative to availability for the child would be upon release.

Second, this court erred in not terminating the Father's parental rights where the weight of the evidence suggests that no bond has ever existed between the child and the Father, even prior to and during his incarceration.

Third, this court erred in not terminating Father's parental rights where the weight of the evidence suggests that Father never performed any meaningful parental duties on behalf of the child.

---

[1] Mother did not file an appeal from the decree terminating her parental rights.

1





Fourth, this court erred in not terminating Father's parental rights where, since the Petitioners were granted Permanent Legal Custodianship by the Juvenile Court, the only efforts Father made to initiate or maintain a relationship with the child was the writing of an occasional letter or card, had a few sporadic visits at a state prison, and made a small number of phone calls to the child.

Fifth, this court erred in determining that the Father had effectively utilized the resources he had at his disposal when only a handful of written communications were sent to the child, who could not even read, and that the programming the Father took advantage of during his lengthy incarceration were aimed at addressing his own problems and had nothing to do with parenting and/or the issues that led the child being placed with a Permanent Legal Custodian.

Sixth, this court erred in not finding termination of Father's parental rights was appropriate when the uncontroverted testimony indicated that Father had not had any meaningful contact with the child since June of 2014.

## BACKGROUND

Appellants became permanent legal custodians of the child (S.B.) at the conclusion of dependency proceedings in June, 2014. *Involuntary Termination of Parental Rights Hearing Transcript, 3/10/16, p. 26.* At the time, father was incarcerated in SCI Mercer. Soon after, Father made consistent attempts to contact Appellants at least once a week to speak with S.B. When Appellants were unavailable, he would call back at a later time, or on a different date. *Involuntary Termination of Parental Rights Hearing Transcript, 3/10/16, p. 68.*

Appellants brought the child to visit the father in prison once or twice in 2013 but subsequently refused to allow the child to see her father, despite father's numerous requests. Appellant grandmother stated she and her husband "chose not to normalize the prison system for

2

an infant." *Involuntary Termination of Parental Rights Hearing Transcript, 3/10/16, p 28, 43, 70.*

In addition to the relationship that exists with the maternal grandmother and her new husband, S.B. also has an established relationship with her biological maternal grandfather who she visits every Sunday. *Involuntary Termination of Parental Rights Hearing Transcript, 3/10/16, p. 31, 54.* When S.B. visits with her grandfather, the father makes regular phone calls to speak with the child. Usually, their conversations last about a half hour. *Involuntary Termination of Parental Rights Hearing Transcript, 3/10/16, p 56.* Many Sundays, the father calls to speak with the child twice. *Involuntary Termination of Parental Rights Hearing Transcript, 3/10/16, p. 53, 56.* During these phone calls, S.B. recognizes his voice and knows him as her father. She calls him "daddy A▪▪▪▪." She seems happy and excited when she gets to talk with him and is "bubbly, outgoing, and very talkative." *Involuntary Termination of Parental Rights Hearing Transcript, 3/10/16, p. 54-55, 59, 77.*

Father's last request to have visitation with S.B. in prison was around Father's Day, 2015. At first, Appellants agreed to bring the child to Mercer. Later, Appellants refused. When father learned Appellants were not bringing S.B. to visit, he called to speak with S.B. on Father's Day. Though he could hear the child in the background, Appellants did not allow S.B. to speak to him. At this time, Appellant told the father she and her husband were petitioning to terminate his parental rights. She had no intention of allowing him to speak to the child again. *Involuntary Termination of Parental Rights Hearing Transcript, 3/10/16, p. 72.* After this conversation, father's attempts to contact the child through the Appellants ceased. Instead, the father directed his focus to contacting S.B. while she visited with her grandfather. *Involuntary Termination of Parental Rights Hearing Transcript, 3/10/16, p. 73.*

3

Though denied visits with the child, the father still wrote letters, sent cards, drawings, pictures, and gifts to the child for her birthday, Christmas, and at various other times during the year. Many of these gifts he made by hand. *Involuntary Termination of Parental Rights Hearing Transcript, 3/10/16, p. 28, 43, 53, 69.* Most of these gifts were sent to the child's grandfather's home, in numbers too great to count. *Involuntary Termination of Parental Rights Hearing Transcript, 3/10/16, p. 53-54.* Father even paid to have a picture taken of himself while in prison, and sent this photo to the child so she would know what he looked like. *Involuntary Termination of Parental Rights Hearing Transcript, 3/10/16, p. 68.*

When asked whether she or her husband ever argued with the father or denied him contact with S.B., Appellant grandmother at first denied this. *Involuntary Termination of Parental Rights Hearing Transcript, 3/10/16, p. 29.* However, she later admitted she discontinued facilitating phone contact between the father and the child. *Involuntary Termination of Parental Rights Hearing Transcript, 3/10/16, p. 38.*

Appellant's assertion father was inconsistent with his attempts to contact the child was also directly contradicted by her own testimony, when she admitted she knew the father contacted S.B. while she had weekly visits with her grandfather. *Involuntary Termination of Parental Rights Hearing Transcript, 3/10/16, p. 38.*

Father also testified he completed numerous programs, including a violence prevention class and therapeutic community program. He was also considered a low-risk inmate, which gave him the ability to work outside the prison and learn a trade. Currently, father is skilled in welding and carpentry. *Involuntary Termination of Parental Rights Hearing Transcript, 3/10/16, p. 75, 83.* Father also formulated a relapse prevention plan to implement upon his release. *Involuntary Termination of Parental Rights Hearing Transcript, 3/10/16, p. 78.* His minimum

4

parole date is at the end of 2016. He will max out in 2019. *Involuntary Termination of Parental Rights Hearing Transcript, 3/10/16, p. 73-74.*

At the conclusion of testimony, this court determined the Appellants had not met their burden in proving grounds for termination existed relative to the father by clear and convincing evidence. This court denied their petition to terminate the father's parental rights.

## STANDARD OF REVIEW

In reviewing an appeal from an order terminating parental rights,

> Appellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for parental rights. [The] standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re: R.J.T.,* 608 Pa. 9, 9 A.3d 1179, 1190 (2010).

> If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.* An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.* Instead, a decision may be reversed for an abuse of discretion only upon determination of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*

## DISCUSSION

"Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances." *In re B.N.M.,* 856 A.2d 847, 855 (Pa. Super 2004). "A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship." *Id.* "Where a parent is incarcerated, the fact of incarceration does not, in itself, provide grounds for the termination of parental rights." *Id.* On the other hand, a parent's incarceration does not preclude termination of parental rights if the incarcerated parent fails to utilize given resources and to take affirmative steps to support a parent-child relationsip. *In re*

5

*D.J.S., 737 A.2d 283 (PaSuper 1999).* Where the parent does not exercise reasonable firmness in "declining to yield to obstacles" his parental rights may be forfeited. *In re A.L.D., 797 A.2d 326 (PaSuper 2002)*

Appellants' contention this court erred in finding insufficient grounds to terminate father's parental rights to the child is without merit. Appellants point to father's incarceration, supposed "sporadic" contact, and inability to perform meaningful parental duties on behalf of the child to show father's rights should be terminated. However, the testimony at the termination hearing showed father's contact with S.B. was frequent, that S.B. was bonded to the father and looked forward to interacting with him, and that the father was committed to providing for the child upon his release.

It is clear to this court the father has done everything he could do from prison to better himself, remedy the conditions which resulted in the child's placement, and foster a positive relationship with S.B. Based on his frequent and continuing contact with the child and his actions while incarcerated, he has shown "no settled purpose" of relinquishing his parental claim to the child or refusal to remedy the conditions which led to her placement. *See* 23 Pa. C.S.A. §2511(a)(1) and (a)(2).

The father completed numerous programs while in prison to address any problem he may have had with drugs. He completed a violence prevention course and earned trustee status in the prison. He is thus eligible to work outside the prison walls and learn trade skills that will make him a marketable worker and productive member of society upon his release. *Involuntary Termination of Parental Rights Hearing Transcript, 3/10/16, p. 75, 83.* In this way, father, though incarcerated, continuously worked to remedy conditions that lead to the child's placement.

6

The father and the child's grandfather shared regular contact every day, and the father has regular and meaningful contact with the child every Sunday. *Involuntary Termination of Parental Rights Hearing Transcript, 3/10/16, p. 54-56.* The testimony showed the child looks forward to talking to her father, recognizes his voice, recognizes his face, and has a positive relationship with him. During father's incarceration, his attempts to contact the child were not limited to letters. He sent pictures and gifts in numbers too great to count. *Involuntary Termination of Parental Rights Hearing Transcript, 3/10/16, p. 28, 43, 53, 69.* When Appellants denied him contact with the child, father continued to contact the child through her other grandfather and was not discouraged.

No credible testimony was presented to show a lack of bond or failure of the father to take an interest in his daughter's life. To the contrary, testimony tended to show the Appellants did everything in their power to thwart father's contact with S.B. and extinguish the bond between them. Appellant grandmother testified she did not want to "normalize" the prison system for her grandchild, and wanted to send S.B. to school with the last name of Boyd, like all the other children. *Involuntary Termination of Parental Rights Hearing Transcript, 3/10/16, p.28, 43, 49, 70.* She and her husband denied the father contact on Father's Day 2015. By all accounts, they have never supported a relationship with the child's father and see no benefit to her relationship with him. In light of these facts, clear and convincing evidence did not exist to support termination of father's parental rights under §2511(a)(1) or (2).

The remaining statutory subsections permitting termination of parental rights are inapplicable to the father.

The father is the birth father of the child. Termination under (a)(3) is therefore improper. *See* 23 Pa. C.S.A. §2511(a)(3).

7

S.B. was not in the custody of an agency at the time the petition was filed, "under such circumstances where the identity or the whereabouts of the parents is/are unknown and cannot be ascertained." *See* 23 Pa. C.S.A. §2511(a)(4).

Subsection five is also inapplicable. The child was not removed from the father's care. *See* 23 Pa. C.S.A. §2511(a)(5).

Subsection six is inapplicable. The child was four years old at the time of the termination hearing. In light of the preceding analysis, it is clear father did everything he could to maintain continuing and meaningful contact with the child, despite his inability to provide substantial financial support for her due to incarceration. *See* 23 Pa. C.S.A. §2511 (a)(6)

Subsection seven is inapplicable. No testimony was presented to show the child was conceived as a result of rape or incest. *See* 23 Pa. C.S.A. §2511(a)(7)

Subsection eight is inapplicable. A permanent legal custodianship does not terminate a parent's rights to his or her child, nor does it preclude a parent from pursing custody and/or visitation with the child in the future. To terminate father's rights under this subsection would ignore the progress he has made while incarcerated and the very obvious bond he and S.B. share. There is no evidence, outside father's incarceration, termination of fathers parental rights would serve the needs and welfare of the child. *See* 23 Pa. C.S.A. §2511(a)(8).

Finally, subsection nine is inapplicable. Father has not been convicted of any of the enumerated offences in §2511(a)(9). *See* 23 Pa. C.S.A. §2511(a)(9).

## CONCLUSION

The evidence presented reflects the Appellants failed to meet their burden showing the father failed to utilize available resources to maintain a close relationship with his child while imprisoned. The father still does all in his power to maintain contact with her. In denying

8

Appellants' request to terminate father's parental rights, this court did not err. It is therefore requested the Superior Court affirm.

Dated this ___ day of May, 2016

BY THE COURT:

_____J.

ROBERT A. SAMBROAK, JR.

cc:   Alison Scarpitti, Esq.
      150 East 8th Street
      Erie, PA 16507

      Deanna Heasley, Esq.
      333 State Street
      Suite 203
      Erie, PA 16507

      Patrick Kelley, Esq.
      2503 West 26th Street
      Erie, PA 16506

9

IN RE:                       :        IN THE COURT OF COMMON PLEAS
                           :        OF ERIE COUNTY, PENNSYLVANIA

ADOPTION OF            :

                           :        ORPHANS' COURT DIVISION

S██████ R███ B███████     :        NO: 55-2015

## ORDER

AND NOW, this 10th day of March, 2016, following a hearing on the petition for

termination of parental rights filed by the maternal grandparents, and after consideration of the

evidence and applicable law, it is hereby **ORDERED, ADJUDGED**, and **DECREED** the

petition as to the biological father, A████ B████ is **DENIED**.

BY THE COURT:

_____J.
ROBERT A. SAMBROAK, JR.

cc: Alison Scarpitti, Esq.
     150 E 8th St.
     Erie, PA 16507

     Daniel Marnen. Esq
     821 State Street
     Erie, PA 16501

     Deanna Heasley Esq.
     333 State Street
     Suite 203
     Erie PA 16507



**FILED**
MAR 10 2016
Register of Wills

IN THE MATTER OF          :      **COURT OF COMMON PLEAS**
THE ADOPTION OF:        :      **ERIE COUNTY PENNSYLVANIA**
                             :      **ORPHANS COURT DIVISION**
                             :

S█████ R███ B████████    :      **No 55 in Adoption 2015**

## NOTICE OF APPEAL-CHILDREN'S FAST TRACK

Notice is hereby given that the Petitioners in the above-captioned action appeal the attached Order concerning the parental rights to a minor child, entered by the Court on March 10, 2016.

Respectfully submitted,

_____
Patrick W. Kelley, Esq.
Atty ID# 207662
2503 W. 26th St.
Erie, PA 16506

## NOTICE OF CHILDREN'S FAST TRACK APPEAL

Pursuant to Pa.R.A.P. 102 and 904 Notice is hereby given that this is a Children's Fast Track Appeal and should be marked as such by the Prothonotary.

_____
Patrick W. Kelley, Esq.

## REQUEST FOR TRANSCRIPT (N/A)

Counsel is in receipt of the transcript of the proceedings on March 10, 2016.

_____
Patrick W. Kelley, Esq.

**FILED**
APR 11 2016
Register of Wills

B

IN THE MATTER OF   :  COURT OF COMMON PLEAS
THE ADOPTION OF:   :  ERIE COUNTY PENNSYLVANIA
         :  ORPHANS COURT DIVISION
         :
S██████ R████ B████████  :  No 55 in Adoption 2015

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was duly served by hand or by mail on the following:

Hon. Robert A. Sambroak, Jr.
Judicial Chambers
Erie County Courthouse

Alison Scarpitti, Esq.
Counsel for Respondent Father
e-mail/ Courthouse mail

Lisa Walbridge, Esq.
Counsel for Respondent Mother
e-mail/ Courthouse Mail

Deanna L. Heasley, Esq.
G.A.L.

Court Administration
Erie County Courthouse

Respectfully submitted,

_____
Patrick W. Kelley, Esq.

_____
Date  4/4/16